COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

JUAN MANUEL BALLI, JOSE R.
SANCHEZ,   )

and JOSE A. VIERA,                                            )              
No.  08-04-00034-CV

                                                                              )

Appellants,                         )                    Appeal from the

                                                                              )

v.                                                                           )                
210th District Court

                                                                              )

EL PASO INDEPENDENT SCHOOL                 )             of El Paso County,
Texas

DISTRICT,                                                           )

                                                                              )                   (TC# 2001-2510)

Appellee.                           )

 

 

O
P I N I O N

 

This is an appeal
from the trial court=s
granting of a plea to the jurisdiction in favor of Appellee El Paso Independent
School District (AEPISD@). 
The sole issue is whether the Appellants exhausted their administrative
remedies under the Texas Commission on Human Rights Act (ATCHRA@
or Athe Act@)
before filing their lawsuit.  We find
that they did, and we  reverse and
remand.








In July 2001,
Appellants sued their employer, EPISD, for damages and declaratory and
injunctive relief under the TCHRA based on their allegations of sexual harassment
by a fellow EPISD employee. 
Specifically, they alleged claims for sex discrimination, retaliation
for opposing unlawful employment discrimination, and for being subjected to a
hostile work environment due to the severe and pervasive nature of the
treatment.  EPISD filed a plea to the
jurisdiction, arguing that the trial court lacked subject matter jurisdiction
because despite having filed their respective complaints with the Equal
Employment Opportunity Commission (AEEOC@), Appellants had failed to file their
complaints with the Texas Commission on Human Rights (ATCHR@or Athe
Commission@) within
180 days of the last alleged discriminatory acts.  As jurisdictional evidence, EPISD attached an
affidavit from Raymond J. Hammarth, Program Supervisor of the Commission and
its records custodian, attesting that as of August 6, 2001, the Commission had
no records on file regarding the Appellants=
EEOC complaints.  

On February 5,
2003, the trial court held a hearing on EPISD=s
plea to the jurisdiction.  At that
hearing, EPISD introduced the Appellants=
respective original charges of discrimination (EEOC Form 5, ACharge of Discrimination@), which were filed with the EEOC.  All the complaints were filed on July 15,
1999, each was addressed to ATexas
Human Rights Commission and EEOC,@
and the box just above the complainant=s
signature line, requesting that the charge be filed with both the EEOC and the
state agency, TCHR, that is, dual-filing, was left unmarked in every
complaint.  Further, in their respective
complaints, each Appellant alleged that he had been discriminated against
because of his sex Ain
violation of Title VII of the Civil Rights Act of 1964.@  At the hearing, EPISD argued that despite
Appellants=
assumptions that their complaints had been forwarded to the Commission, EPISD
had conclusively established that the Commission did not receive their
complaints, thus Appellants had failed to file their complaints with the
Commission within the requisite 180-day time period under the statute.  The trial court continued the hearing to
allow the parties an opportunity to submit additional evidence.








On December 10,
2003, the trial court held a second hearing on the plea to the
jurisdiction.  At that hearing,
Appellants introduced the testimony of Robert Calderon, the director of the
EEOC office in El Paso, Texas.  Mr.
Calderon testified that he was the EEOC director in July 1999 and that
Appellants= charges
were processed and investigated by his office. 
It was his understanding that under the Worksharing Agreement between
the EEOC and the Commission, each entity was the agent of the other and someone
who wanted to file a charge with the Commission could file it with the
EEOC.  Specifically, Mr. Calderon
believed that because his office was authorized to receive charges for the
Commission, the charging party could feel that by filing with the EEOC, they
have filed with the Commission.  Mr.
Calderon explained that when a person files a charge of discrimination with the
EEOC office, EEOC takes all the necessary information, serves the charge to the
employer within ten days, and notifies the Commission that a charge has been
filed.  According to Mr. Calderon, his
office notifies the Commission with respect to every charge.  Mr. Calderon agreed that none of the
Appellants checked the box on the charge form that requests dual filing.  However, Mr. Calderon also testified that his
EEOC office Atotally
ignore[s]@ the
dual-filing box.








The Appellants= respective EEOC case files showed that
an EEOC Form 212 charge transmittal form was prepared and addressed to the
Commission=s Austin
office.  The transmittal forms for Mr.
Viera and Mr. Balli were both dated July 19, 1999, but Mr. Sanchez=s form was undated.  The case log sheet in each Appellants= file shows that an EEOC employee
initialed the log item AForm
212 mailed to THRC@ and
dated that item completed on July 19, 1999. 
Mr. Calderon assumed that because the employee initialed the log
item in each file, Appellants=
respective charges were sent to the Commission. 
Mr. Calderon stated that EEOC transmittals of charges to the Commission
are usually sent by regular mail, although a long time ago they used to be sent
by certified mail.  Mr. Calderon
explained that the bottom portion of the Form 212 contains an acknowledgment of
receipt section, which the Commission director, William Hale, or his designee,
is instructed to complete and to return to EEOC.  On the form, the Commission can request to
initially investigate a claim, by marking a box.  In each Appellants=
case, the acknowledgment portion of the Form 212 was not completed.

Based on his
experience and practice, Mr. Calderon could not assume that by Appellants= failure to check the box to request
dual-filing necessarily meant that their charges were not received by the
Commission.  Rather, he relied more on
the case log files that indicated an EEOC employee sent the charges to the
Commission.  Mr. Calderon explained that
locally:

[The EEOC] have established a
procedure, and our employees know that procedure and they know that the
procedure is that, on every single case, they are to send the Form 212 to the
Texas Human Rights Commission.  And we
get--we send a whole bunch and we get a whole bunch.  It=s
common procedure for us to do that.

 

And for them, TCHR,
Texas Commission Human Rights, to mark the boxes, one of the boxes, usually it=s the one that says, we=re not going to investigate and send it
back to us with somebody=s
signature.

 








According to Mr. Calderon, it was
the customary and usual practice of Mr. Hale or one of his Commission
representatives, to return the Form 212 with a signature from someone at the
Commission.  Mr. Calderon had no idea why
his office would not possess a Commission-signed Form 212 with respect to these
charges, but speculated that is was possible that the Form 212 was never
received, the Commission received it, but never sent it back, or the returned
form could have been lost.  His office
handles up to 1,300 cases a year, and based on his experience, Mr. Calderon did
not believe that his office follows up with the Commission when Form 212s are
not returned.  Following the second
hearing, the trial court granted EPISD=s
plea to the jurisdiction, dismissing Appellants=
case for lack of subject matter jurisdiction

A plea to the
jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of
action without regard to whether the claim asserted has merit.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  A party may
challenge a court=s subject
matter jurisdiction by filing a plea to the jurisdiction.  Tex. Dep=t
of Transp. v. Jones, 8 S.W.3d 636, 638-39 (Tex. 1999).  The plaintiff has the burden to allege facts
affirmatively demonstrating that the trial court has subject matter
jurisdiction.  Texas Ass=n of Business v. Texas Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993).  We take
as true the facts plead in the plaintiff=s
petition in determining whether those facts support jurisdiction in the trial
court and we may review the entire record to determine if there is
jurisdiction.  Id. at 446.  Indeed, a court deciding a plea to the
jurisdiction is not required to look solely to the pleadings, but rather it may
also consider evidence and must do so when necessary to resolve the
jurisdictional issues raised.  Bland,
34 S.W.3d at 555; see County of Cameron v. Brown, 80 S.W.3d 549, 555
(Tex. 2002).  The reviewing court,
however, should confine itself to the evidence relevant to the jurisdictional
issue.  Bland, 34 S.W.3d at
555.  Whether the trial court properly
granted the plea to the jurisdiction is a pure question of law which we examine
under a de novo standard of review. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).








The Act, as codified
in Chapter 21 of the Texas Labor Code, establishes correlation of state law
with federal law in the area of employment discrimination.  See Schroeder v. Tex. Iron Works, Inc.,
813 S.W.2d 483, 485 (Tex. 1991). 
Specifically, the Act provides for the execution of the policies of
Title VII of the Civil Rights Act of 1964 and its subsequent amendments, and
establishes the Commission as the state deferral agency, so that investigation
and resolution of employment discrimination claims may be handled at the state
level.[1]  See Schroeder, 813 S.W.2d at 485; Tex.Lab.Code Ann. '' 21.001, 21.002, 21.003, 21.006
(Vernon 1996 & Supp. 2005).

Under the Act, a
person claiming employment discrimination must exhaust his administrative
remedies prior to bringing a civil action in the district court.  See Tex.Lab.Code
Ann. ''
21.201-.262; Schroeder, 813 S.W.2d at 488.  To comply with the exhaustion requirement, an
aggrieved employee must:  (1) file a
sworn, written complaint with the Commission within 180 days of the alleged
discriminatory act; (2) allow the Commission 180 days to dismiss or resolve the
complaint before filing suit; and (3) file suit in district court no later than
two years after the complaint is filed with the Commission.  See Tex.Lab.Code
Ann. ''
21.201-.202, 21.208, 21.256; City of Houston v. Fletcher, 63 S.W.3d 920,
922 (Tex.App.--Houston [14th Dist.] 2002, no pet.).  Failure to comply with these mandatory
statutory requirements deprives a trial court of subject matter jurisdiction in
a subsequent lawsuit alleging violations of the Act.  See Schroeder, 813 S.W.2d at 488.








The issue before
this Court is whether Appellants timely filed their complaints with the
Commission pursuant to Section 21.201 when they filed their complaints with the
EEOC office.  Relying on federal
authorities, Appellants assert that by filing their complaints with the EEOC
and by the EEOC, acting as a limited agent of the Commission under the entities= Worksharing Agreement, subsequently
transmitting their charges of discrimination to the Commission, their
complaints were nominally filed with the Commission such that they complied
with the filing requirement under the Act.

Under the
Worksharing Agreement with the EEOC and the Commission for fiscal year 1999,
under Section II AFiling of
Charges of Discrimination,@
subsection A states:

In order to facilitate the assertion of
employment rights, the EEOC and the [Commission] each designate the other as
its agent for the purpose of receiving and drafting charges, including those
that are not jurisdictional with the agency that initially receives the
charges.  EEOC=s
receipt of charges on the [Commission=s]
behalf will automatically initiate the proceedings of both EEOC and the
[Commission] for purposes of Section 706(c) and (e)(1) of Title VII.  This delegation of authority to receive
charges does not include the right of one Agency to determine the jurisdiction
of the other Agency over a charge. 
Charges can be transferred from one agency to another in accordance with
the terms of this agreement or by other mutual agreement.[2]

 








In several leading opinions, the
Fifth Circuit Court of Appeals has explained the relationship between the EEOC
and the Commission in the context of determining whether a complainant had
initiated a state proceeding such that she or he fell within the extended
300-day filing period for asserting a federal claim under the Civil Rights Act
of 1964, ' 706(e),
as amended, 42 U.S.C.A. '
2000e-5(e)(1)(West 2005).  See Griffin
v. City of Dallas, 26 F.3d 610, 612-14 (5th Cir. 1994); Washington v.
Patlis, 868 F.2d 172, 175 (Fifth Cir. 1989); Urrutia v. Valero Energy
Corp., 841 F.2d 123, 125 (5th Cir. 1988). 
In accordance with these federal authorities, this Court explained in an
unpublished opinion that:

The federal act carves an exception for
cases in which the person aggrieved has initially instituted proceedings with a
state or local fair employment practice (FEP) agency having the authority to
grant or seek relief, such as the TCHR. 
In that instance, the charge shall be filed with the EEOC within 300
days of the violation.  A nominal filing
is all that is required to Ainstitute
proceedings@ under
Section 706(e).  The nominal filing
required to institute state proceedings occurs when the EEOC transmits the
complaint on a standard form.  [Citations
omitted].

 

El Paso City-County Health and
Environmental Dist. v. Bernal, No. 08-00-00349-CV, 2001 WL 1169915, *4
(Tex.App.--El Paso Oct. 4, 2001, no pet.)(not designated for publication).

In the Bernal
case, we determined that A[w]hen,
pursuant to the worksharing agreement here, the EEOC received an employment
discrimination charge as agent for the TCHR, its acceptance of the charge
satisfied the nominal-filing requirement for instituting proceedings with a
state agency under the Title VII provision, thus extending the statute of
limitations to 300 days.@  Id. 


The question here,
however, requires that we consider the entities=
relationship under an EEOC/Commission Worksharing Agreement from a slightly
different angle.  In this case, we must
consider how the relationship between the EEOC and the Commission, as defined
by their Agreement along with the other jurisdictional evidence presented,
affects the Appellants=
compliance with the 180-day filing period limitation, and consequently the
exhaustion of their administrative remedies for state law purposes, based on
the Appellants= decision
to file their complaints with the EEOC, rather than directly with the
Commission.








On appeal, EPISD
initially questions the validity of the Worksharing Agreement, specifically
challenging the statutory authority of the Commission to authorize the filing
of a complaint under the Act with any federal agency.  The Commission, as a state administrative
agency, is a creature of the Legislature and may exercise only those powers the
law confers upon them, in clear and express statutory language and those
reasonably necessary to fulfill a function or perform a duty that the
Legislature has expressly placed with the agency.  See In re Entergy Corp., 142 S.W.3d
316, 322 (Tex. 2004); Subaru of America, Inc. v. David McDavid Nissan, Inc.,
84 S.W.3d 212, 220 (Tex. 2002); Public Utility Comm=n of Texas v. GTE‑Southwest, Inc.,
901 S.W.2d 401, 406-07 (Tex. 1995).

To determine the
scope of the Commission=s
authority, we must construe the relevant statutory provisions in Chapter 21 of
the Labor Code.  Statutory construction
is a question of law.  See Johnson v.
City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989).  In construing a statute, our primary
objective is to ascertain and give effect to the Legislature=s intent.  See McIntyre v. Ramirez, 109 S.W.3d
741, 745 (Tex. 2003), citing Tex. Dep=t
of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002).  We look first to the statute=s plain and common meaning; if the
statutory language is unambiguous, we will interpret the statute according to
its plain meaning.  Id. However,
if the statute is ambiguous, we then consider other matters to ascertain the
Legislature=s intent,
including the objective of the law, the legislative history, and the
consequences of a particular construction. 
See McIntyre, 109 S.W.3d at 745; Tex.Gov=t Code Ann. '
311.023 (Vernon 2005).








Among the general
purposes of the Act are to:  (1) provide
for the execution of the policies of Title VII of the Civil Rights Act of 1964
and its subsequent amendments (42 U.S.C. Section 2000e et seq.); (2) identify
and create an authority that meets the criteria under 42 U.S.C. Section
2000e-5(c) and 29 U.S.C. Section 633; and (3) promote the interests, rights,
and privileges of persons in this state. 
See Tex.Lab.Code Ann.
' 21.001.  Thus, the Legislature has designated the
Commission to serve as the State=s
deferral agency for cases deferred by the EEOC to the Commission as provided in
Title VII of the Civil Rights Act of 1964, as amended.  See 42 U.S.C.A. ' 2000e-5(c).

Under Section
21.003 of the Texas Labor Code, the Commission may:

(1)        promote the creation of local
commissions on human rights by cooperating or contracting with individuals or
state, local, or other agencies, public or private, including agencies of the
federal government and of other states;

 

(2)        receive, investigate, seek to
conciliate, and pass on complaints alleging violations of this chapter;

                                                              .               .               .

 

(7)        adopt procedural rules to carry out the
purposes and policies of this chapter . . . .

 

Tex.Lab.Code
Ann. ' 21.003.








The Act defines Alocal commission@
as Aa commission on human relations created
by one or more political subdivisions.@  Id. at '
21.002(11).  Under the agency=s adopted rules, a local commission
must be designated as a Fair Employment Practices Agency (FEPA) by the
EEOC.  See 30 Tex.Reg. 3839 (2005), adopted 30 Tex.Reg. 6065 (2005)(to be codified at
40 Tex.Admin.Code ' 819.2(5)); 30 Tex.Reg. 6079 (2005)(to be codified at 40 Tex.Admin.Code '
819.11(7))(proposed July 1, 2005); 30 Tex.Reg.
3840 (2005), adopted 30 Tex.Reg.
6065 (2005)(to be codified at 40 Tex.Admin.Code
' 819.72 (a)(1)).  Section 21.153 of the Labor Code provides
that a local commission may Acooperate
or contract with a person, including an agency of the federal government or of
another state or municipality.@  Tex.Lab.Code
Ann. ' 21.153(a)(2).  In addition, the Legislature has expressly
granted investigatory and conciliatory powers to local commissions.[3]  See Tex.Lab.Code
Ann. '
21.154(a).  The Labor Code also
establishes a deferral system between the Commission and local
commissions.  Specifically, the statute
provides that:

(a)        The Commission on Human Rights shall
refer a complaint concerning discrimination in employment because of race,
color, disability, religion, sex, national origin, or age that is filed with
that commission to a local commission with the necessary investigatory and
conciliatory powers if:

 

(1)        the complaint has been referred to the
Commission on Human Rights by the federal government; or 

 

(2)        jurisdiction over the subject matter of
the complaint has been deferred to the Commission on Human Rights by the
federal government.

 

Tex.Lab.Code
Ann. '
21.155(a).








Clearly, the
Legislature has given the Commission express authority to promote the creation
of local commissions for local enforcement of state and federal employment
discrimination laws.  It is based on
statutory authority to promote the creation of local commissions by cooperating
or contracting with federal agencies that we find that the Commission has
necessarily been empowered to enter into cooperative agreements with the EEOC
on behalf of itself and local commissions, that is, EEOC-designated Fair
Employment Practices Agencies (FEPAs), for the purpose of providing for an
efficient procedure for deferral and processing of individuals= complaints pursuant to Title VII of
the Civil Rights Act of 1964, as amended, within state and local jurisdictions.[4]  We conclude that the Worksharing Agreement at
issue here, is such an agreement. 
Therefore, given the Commission=s
statutory authority to cooperate and contract with federal agencies, it is of
little import that Section 21.201 does not specifically provide that the
Commission may designate the EEOC as an agent for purposes of filing a
complaint with the Commission.  The
limited designation of the EEOC as an agent for the purpose of establishing an
integrated and cooperative administrative process for local enforcement of
state and federal discrimination claims clearly falls within those powers,
which are reasonably necessary for the Commission to fulfill the express
functions and duties delegated to the Commission by the Legislature.  








Turning to the
1999 Worksharing Agreement, we first note that it specifically addresses the
entities=
agreement with respect to the initial filing of charges of discrimination.  Pursuant to the Agreement, both the EEOC and
the Commission are limited agents of each other for the purpose of receiving
and drafting charges, including those that are not jurisdictional with the
agency.  The Agreement expressly states
that A[t]his
delegation of authority to receive charges does not include the right of one
Agency to determine the jurisdiction of the other Agency over the charge.@ 
We observe that Agreement=s
use of the term Ajurisdiction@ is a reference to each entities= right to determine its jurisdiction
over any particular charge and its ultimate disposition, not a reference to the
trial court=s right
to determine its jurisdiction over a state claim, as asserted by Appellee.

We also note that
under the Agreement, though limited, the EEOC=s
role as an agent clearly turns on whether it is receiving charges on behalf of
the Commission, as compared to receiving charges for the EEOC itself.  Notably, unlike for federal claims, there is
nothing in the Agreement that suggests that the EEOC=s
receipt of charges on the Commission=s
behalf will automatically initiate state proceedings for purposes of the state
law.  Therefore, we cannot agree with the
Appellants that the mere filing of a complaint with the EEOC is automatically
the equivalent of filing a direct complaint with the Commission and thus, consequently,
we decline to take the holdings of Urrutia and Griffin outside
their proper context.  See e.g., Price
v. Philadelphia Am. Life Ins. Co., 934 S.W.2d 771, 773-74
(Tex.App.--Houston [14th Dist.] 1996, no writ)(relying on the Griffin
opinion as authority for the appellant=s
Section 21.201 compliance, based on the Griffin court=s determination that Aupon the EEOC=s
receipt of the complaint, the TCHR, for all legal and practical purposes,
received the complaint.  As in Urrutia,
we hold here that once the TCHR received Mr. Griffin=s
complaint, even if only nominally, proceedings were instituted within the
meaning of section 706(e)[Civil Rights Act, now 42 U.S.C.A. ' 2000e-5(e)(1)].@).













Nevertheless, we
still find that the Appellants timely filed their complaints with the
Commission, even if only nominally.  In
their original charge forms, the Appellants inserted ATexas
Human Rights Commission@
as the state agency to receive the charge, but they neglected to check the box
that stated, AI want
this charge filed with both the EEOC and the State or local Agency, if any.@ 
Regardless of the Appellants=
omissions, the local EEOC director, Robert Calderon, testified that it was
local established procedure that every charge it receives is forwarded to the
Commission.  Indeed, they simply ignore
the dual-filing box and, according to Mr. Calderon, A[their]
new forms don=t even
have the box anymore.@  Mr. Calderon explained that his office is
authorized to receive charges for the Commission and as a matter of local EEOC
policy, every charge it receives is forwarded to the Commission.[5]  With regard to Appellants= complaints, the EEOC case log sheets
show that the EEOC transmitted the charges to the Commission by regular
mail.  The EEOC case files, however,
contained no evidence that the Commission actually received Appellants= charges.  Specifically, there were no acknowledgments
of receipt from the Commission on the Appellants=
Form 212s.  Further, the Commission had
no records on file regarding the Appellants=
employment discrimination complaints. 
Thus, we conclude there is strong jurisdictional evidence that EEOC
transmitted the Appellants=
complaints, but that the Commission never received those complaints.  








Appellees contend
that this case is similar to Smith v. University of Texas Southwestern
Medical Center of Dallas, 101 S.W.3d 185, 188 (Tex.App.--Dallas 2003, no
pet.), in which the appellant merely reported her claim to the EEOC, did not request
dual-filing, and presented no evidence that the Commission ever Areceived, investigated, or resolved her
complaint in any fashion.@  The Smith Court held that the
appellant had failed to exhaust her administrative remedies under the Texas
Labor Code.  However, unlike the facts in
Smith, the Appellants put forth jurisdictional evidence to support their
assertion that their complaints were filed with the EEOC, which had received
their complaints on the Commission=s
behalf, and then subsequently transmitted those complaints to the
Commission.  Despite Appellee=s contentions, under the Act, an
aggrieved employee is only required to file their complaint with the Commission
within 180 days of the alleged discriminatory act, wait 180 days before filing
suit, and then file his suit no later than two years after the complaint was
filed with the Commission.  See Schroeder,
813 S.W.2d at 488; Fletcher, 63 S.W.3d at 922.  For purposes of the statute, the Appellants
nominally filed their complaints with the Commission when the EEOC, the
Commission=s
designated agent for receiving such complaints, forwarded the Appellants= complaints to the Commission.  Thus, we conclude that the state
administrative review process was initiated by the EEOC=s
transmittal of the Appellants=
complaints to the Commission. 

We wholly
recognize that this case demonstrates an apparent breakdown in the
administrative system established between the Commission and the EEOC.  This failure in the system is to blame for
the Commission=s lack of
receipt and inability to investigate Appellants=
complaints itself.  Though unfortunate,
this has no consequence on the Appellants=
burden to meet the exhaustion requirements because the Appellants are not
required to show that the Commission actually received their complaints and
investigated them.  See e.g., Burgmann
Seals America, Inc. v. Cadenhead, 135 S.W.3d 854, 857-58 (Tex.App.--Houston
[1st Dist.] 2004, pet. denied)(appellant sufficiently filed his complaint with
TCHR by filing with the EEOC and checking the box for simultaneous filing with
the TCHR and exhausted his remedies by filing suit within the statutory time
frame).  Because the Appellants timely
filed their complaints with the Commission, though nominally, and undisputedly
met the remaining exhaustion requirements, we conclude that the trial court had
subject matter jurisdiction over the Appellants=
claims.  Therefore, the trial court erred
in granting the plea to the jurisdiction. 
Appellants= sole
issue is sustained.

For the reasons
stated above, we reverse the trial court=s
order and remand the case to the trial court for further proceedings.

 

 

 

March
9, 2006

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
In 2003, the Legislature abolished the former Texas Commission on Human Rights
and transferred its powers and duties to the newly-created Civil Rights
Division of the Texas Workforce Commission. 
See Tex.Lab.Code Ann.
' 21.0015 (Vernon Supp. 2005); Acts of
2003, 78th Leg., R.S., ch. 302, '
5, 2003 Tex.Gen.Laws 1279, 1281.
The enactment became effective on March 19, 2004.  See Notice Regarding the Transfer of
Tex. Comm=n on
Human Rights to the Tex. Workforce Comm=n
Civil Rights Division, 29 Tex.Reg. 2977 (Mar. 19, 2004).





[2]
We observe that the Worksharing Agreement for fiscal year 2002, not the Working
Agreement for fiscal year 1999, was the only worksharing agreement admitted at
the December 2003 hearing, despite the Appellants=
intent to introduce the 1999 Worksharing Agreement and the trial court having Aadmitted@
the 1999 Worksharing Agreement into evidence at that hearing.  This error is of no import in our analysis,
however, because the parties read passages of the relevant provision from the
1999 Agreement into the record and further, we observe that the 1999 provision,
as read, is identical to that which appears in the 2002 Agreement.





[3]
Section 21.154(a) provides: 

 

If the federal
government or the Commission on Human Rights refers a complaint alleging a
violation of this chapter to a local commission or defers jurisdiction over the
subject matter of the complaint to a local commission, the local commission may
receive, investigate, conciliate, or rule on the complaint and may file a civil
action to carry out the purposes of this chapter.

 

Tex.Lab.Code Ann. '
21.154(a).





[4]
Effective September 27, 2005, the Civil Rights Division adopted the following
rule with regard to workshare agreements: 
AThe
Agency shall enter into workshare agreements with EEOC and local commissions to
ensure an effective and integrated administrative review procedure, share
information, and provide technical assistance and training.@ 
30 Tex.Reg. 3846 (2005),
adopted 30 Tex.Reg. 6065
(2005)(to be codified at 40 Tex.Admin.Code
' 819.76).  In comments on the adopted rules, the Texas
Workforce Commission notes that it adopted '
819.76 Ato
specify the means by which the Agency and a local commission shall officially
coordinate efforts to process employment discrimination complaints.@ 
30 Tex.Reg. 6070 (2005).





[5]
At the time Appellants filed their complaints, former Section 327.1(c) of the
Commission=s rules
provided that:  AThe
complaint shall be filed at the commission office . . . at an office of a local
commission, or at an office of the federal government.@  See 22 Tex.Reg. 1333 (1997). 
Further, former Section 325.2(b) stated A[f]or
a complaint deferred to the commission by the federal government, timeliness of
the complaint shall be measured by the date on which the complaint is received by
the federal government for the purpose of satisfying the filing requirements of
the Texas Labor Code '
21.201.@  22 Tex.Reg.
1331 (1997).  The adopted rules of the
Civil Rights Division currently provide that: 
AThe
complaint shall be filed in writing and under oath, and may be filed with CRD
by mail, fax, or in person with:  (1) the
CRD office on a CRD‑provided form; (2) an EEOC office; or (3) a local
commission office recognized by EEOC as a Fair Employment Practices Agency.@ 
30 Tex.Reg. 3843 (2005),
adopted 30 Tex.Reg. 6065
(2005)(to be codified at 40 Tex.Admin.Code
' 819.41(c)).  Further, Section 819.71 of the current
adopted rules states:

 

For the purpose of satisfying the
filing requirements of Texas Labor Code ' 21.201,
the following shall apply:

 

(1)        For a complaint filed with CRD over
which EEOC has deferred jurisdiction, timeliness of the complaint shall be
determined by the date the complaint is received by CRD.

 

(2)        For a complaint filed with EEOC and
deferred to CRD, timeliness of the complaint shall be determined by the date on
which the complaint is received by EEOC.

 

(3)        For a complaint filed with a local
commission and deferred to CRD, timeliness of the complaint shall be determined
by the date on which the complaint is received by the local commission.

 

30 Tex.Reg. 6082 (2005)(to be codified at 40 Tex.Admin.Code '
819.71)(proposed July 1, 2005).